UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TODD C. ALSTON and<br>GRACE COLE-ALSTON,<br><br>            Petitioners,<br><br>    v.<br><br>UBS FINANCIAL SERVICES, INC.,<br>et al.,<br>            Defendants. | Civil Action 04-01798 (HHK) |

MEMORANDUM OPINION

Petitioners, Todd D. Alston and Grace Cole-Alston ("the Alstons"), bring this action seeking to vacate and set aside an NASD Dispute Resolution arbitration award that followed a dispute with the Alstons' financial advisors, defendants UBS Financial Services, Inc. ("UBS") and Daron D. Fullwood, a former UBS broker. Presently before the court are the parties' cross motions for summary judgment [## 18, 20, 24]. Upon consideration of the motions, the oppositions thereto, and the record of the case, the court concludes that the Alstons' motion should be denied, the respondents' motions should be granted, and the arbitration award should be confirmed.

I. BACKGROUND

The Alstons are a married couple living in Virginia. Todd Alston began working at American Online ("AOL") in the 1990s as an engineer. His wife, Grace Cole-Alston, is a nurse. In February 2000, the couple opened a joint account with UBS. At the time, the Alstons' net worth was $4.5 million, most of which consisted of AOL stock obtained through the exercise of stock options that Todd had received as part of his compensation package at AOL.

At issue in this action is the advice allegedly given by Fullwood, a broker at UBS, to the Alstons regarding a covered call writing strategy for the Alstons' AOL stock options.[1]  The Alstons assert that Fullwood failed to recommend that they diversify their stock holdings and failed to adequately apprise the Alstons of the risks associated with the proposed strategy. Further, respondents' advice to adopt the covered call writing strategy constituted, according to the Alstons, an unsuitable recommendation in violation of Section 10(b) of the Securities Exchange Act of 1934.  UBS and Fullwood paint a different picture of the underlying dispute, alleging that the idea to exercise the stock options originated with the Alstons, that they did advise the Alstons to diversify their holdings but the Alstons refused to do so, and that the Alstons continually refused to sell the AOL stock, despite its falling price.  Ultimately, after selling the AOL stock in February 2001, the Alstons suffered a net loss in the UBS accounts of over $3.5 million.

The Alstons commenced arbitration in August 2002 by submitting a Statement of Claim to NASD Dispute Resolution, Inc., a subsidiary of the NASD.  The arbitral hearing occurred in Washington, D.C. on June 14–18, 2004 and July 13, 2004.  The arbitration panel heard the testimony of witnesses and received documentary evidence from all of the parties to the proceeding.  On August 9, 2004, the arbitration panel issued its award, denying all claims against UBS and Fullwood in their entirety.  The panel also recommended that all reference to the arbitration be expunged from Fullwood's registration records.  This action followed.

---

[1] UBS indicates that a covered call strategy "involves the sale of call options for stock that the seller owns, and that is capable of delivering if the option is exercised and the stock is 'called away.'" UBS Opp'n at 10 n.2.  A call option is the "right, but not the obligation, to purchase stock at a specific price until the expiration date of the option." *Id.*

## II. ANALYSIS

Courts have long recognized that judicial review of an arbitration award is extremely limited. *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 37–38 (1987); *Kanuth v. Prescott, Ball & Turben, Inc.*, 949 F.2d 1175, 1178 (D.C. Cir. 1991); *Apex Plumbing Supply, Inc. v. U.S. Supply Co.*, 142 F.3d 188, 193 (4th Cir. 1998) (calling judicial review of arbitration awards "severely circumscribed").[2] In fact, a court may vacate an arbitration award only if there is a showing that one of the limited circumstances enumerated in the Federal Arbitration Act ("FAA") is present, or if the arbitrator acted in manifest disregard of the law. *LaPrade v. Kidder, Peabody & Co.*, 246 F.3d 702, 706 (D.C. Cir. 2001); *Apex Plumbing*, 142 F.3d at 193.[3]

The statutory grounds for vacating an arbitration award under the FAA are as follows:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

---

[2] This narrow standard of review is necessary "to effectuate th[e] objective" embodied by the FAA; namely, to establish "the desirability of arbitration as an alternative to the complication of litigation." *Fairchild & Co., Inc. v. Richmond, Fredericksburg & Potomac R.R. Co.*, 516 F. Supp. 2d 1305, 1312 (D.D.C. 1981). As the D.C. Circuit has noted, "[t]he strong federal policy in favor of voluntary commercial arbitration would be undermined if the courts had the final say on the merits of the award." *Revere Copper & Brass, Inc. v. Overseas Private Inv. Corp.*, 628 F.2d 81, 84 (D.C. Cir. 1980) (citing Note, *Judicial Review of Arbitration Awards on the Merits*, 63 HARV. L. REV. 681 (1950)).

[3] The Alstons attempt to rely on Virginia law as a basis for vacatur as well. The court, however, need not analyze the Alstons' motion under Virginia law because, to the extent that the FAA and Virginia law conflict, state law is preempted, *Southland Corp. v. Keating*, 465 U.S. 1, 10–16 (1984), and to the extent that the two coincide, the court's analysis would be the same. Furthermore, although the parties had the authority to specify that review of the award would be governed by Virginia law, *see Matsrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52 (1995); *Roadway Package Sys., Inc. v. Kaysar*, 257 F.3d 287 (2001), the record does not reflect that the parties actually did so here.

>(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
>(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10.  Courts also recognize a limited non-statutory ground for vacatur of an arbitration award where an arbitrator has acted in "manifest disregard of the law." *Al-Harbi v. Citibank, N.A.*, 85 F.3d 680, 682 (D.C. Cir. 1996); *Kanuth*, 949 F.2d at 1178 (citing *Wilko v. Swan,* 346 U.S. 427, 436–37 (1953)).  The Alstons bear the "heavy" burden of establishing that vacation of the arbitration award is appropriate.  *Al-Harbi*, 85 F.3d at 683; *see also LaPlade*, 246 F.3d at 706.  Furthermore, in the absence of a legal basis to vacate, this court has no discretion but to confirm the award.  9 U.S.C. § 9; *Bryson v. Gere*, 268 F. Supp. 2d 46, 54 (D.D.C. 2003).

The Alstons contend that the arbitration award should be vacated for two primary reasons: (1) because the arbitrators, according to the Alstons, manifestly disregarded the law; and (2) because of the alleged evident partiality of the arbitrators.[4]  Neither of these arguments has merit.

**A.  Manifest Disregard of the Law**

Manifest disregard of the law "means more than error or misunderstanding with respect to the law." *Kanuth*, 949 F.2d at 1178.  Thus, a party seeking to have an arbitration award vacated

---

[4]  The Alstons also argue that the arbitrators assertedly failed to allow the Alstons to cross-examine certain witnesses in violation of Virginia law.  As discussed *supra*, footnote 3, Virginia vacatur law is preempted by the FAA.  *Southland*, 465 U.S. at 10–16.  Therefore, this argument, because it is based on a law that has no applicability in this proceeding, must fail.  However, the Alstons' cross-examination argument will be considered to the extent it supports their claim that vacatur is appropriate under the FAA.

on this ground must at least establish that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case. *LaPrade*, 246 F.3d at 706 (citing *DiRussa v. Dean Witter Reynolds, Inc.*, 121 F.3d 818, 821 (2d Cir. 1997); *see also Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 392 (2d Cir. 2003) ("Even where explanation for an award is deficient or non-existent, we will confirm it if a justifiable ground for the decision can be inferred from the facts of the case."); *LaPrade v. Kidder, Peabody & Co., Inc.*, 94 F. Supp. 2d 2, 6 (D.D.C. 2000) ("In addition, there must be no colorable support for the Panel's award in the record; if it seems that the Panel rejected plaintiff's argument after fair consideration, then plaintiff's showing falls short, and the Court must enter the Panel's judgment.").

The Alstons contend that the arbitration panel manifestly disregarded the law by ruling against them on their claims that the respondents made two unsuitable recommendations regarding their securities accounts. To support their claims, the Alstons rely heavily on the assertion by their expert that, had Fullwood recommended the covered call writing strategy as alleged, it would not have been suitable for the Alstons. The Alstons further suggest that the respondents failed to dispute either that Fullwood made the recommendation or that it was not suitable for the Alstons. Additionally, the Alstons claim that, by failing to respond properly to an email request they made, Fullwood made a second unsuitable recommendation.[5] The arbitration

---

[5] The Alstons allegedly requested that Fullwood recommend a strategy to pay off the margin balance. Fullwood responded by recommending a strategy that failed to pay off the margin balance in full, instead only reducing it.

panel's refusal to find Fullwood and UBS liable for this email response, according to the Alstons, manifestly disregarded the law.

The Alstons' arguments fail on a number of fronts. First, their papers suggest that they misunderstand their burden before this court. As is required, the Alstons fail to allege that the arbitrators undertook to correctly state the law and then proceeded to disregard their own pronouncement. *Fairchild*, 516 F. Supp. at 1315. Rather, as with the plaintiff's arguments in *Fairchild*, the Alstons' allegations "fall within the realm of errors in the understanding or the application of the law, rather than rising to the level of manifest disregard." *Id.* The proposition advanced by the Alstons, that the arbitrators could only conclude that the recommendations were unsuitable, and that they, therefore, were entitled to prevail, is an argument, not a legal principle. Rejecting the Alstons' argument does not amount to a manifest disregard *of the law. Ruppert v. Deutsche Bank Secs., Inc.*, 2005 U.S. Dist. LEXIS 16871, at *8 (D.D.C. July 11, 2005). Second, even assuming the truth of the Alstons' evidence and granting all reasonable inferences in their favor, the court is able to find a justifiable ground for the arbitration award in the record. *Duferco Int'l Steel Trading*, 333 F.3d at 392. On the record before this court, it appears that the arbitration panel could well have concluded that the Alstons failed to make a showing on several key elements of their unsuitability claims.[6]

---

[6] To prevail on their claim of unsuitability, the Alstons were required to prove: (1) that the securities purchased were unsuited to the Alstons' needs; (2) that respondents knew or reasonably believed the securities were unsuited to the Alstons' needs; (3) that respondents recommended or purchased the unsuitable securities anyway; (4) that, with scienter, respondents made material misrepresentations (or, owing a duty to the Alstons, failed to disclose material information) relating to the suitability of the securities; and (5) that the Alstons justifiably relied to their detriment on respondents' fraudulent conduct. *See, e.g.*, *Banca Cremi v. Alex. Brown & Sons, Inc.*, 132 F.3d 1017, 1032 (4th Cir. 1997); *Brown v. E.F. Hutton Group, Inc.*, 991 F.2d 1020, 1031 (2d Cir. 1993); *O'Connor v. R.F. Lafferty & Co.*, 965 F.2d 893, 898 (10th Cir. 1992).

**B.  Evident Partiality**

Next, the Alston's argue that vacatur is appropriate given the evident partiality of the arbitration panel.  It is well established that a mere appearance of bias is insufficient to demonstrate evident partiality.  *See, e.g.*, *Health Servs. Mgmt. Corp. v. Hughes*, 975 F.2d 1253, 1264 (7th Cir. 1992); *Apperson v. Fleet Carrier Corp.*, 879 F.2d 1344, 1358 (6th Cir. 1989); *Morelite Constr. Corp. v. New York City Dist. Council Carpenters Benefit Funds*, 748 F.2d 79, 83 (2d Cir. 1984).  Rather, to vacate an award because of evident partiality, the party seeking to vacate the award bears a "heavy" burden to establish "'specific facts that indicate improper motives on the part of an arbitrator.'"  *Al-Harbi*, 85 F.3d at 683 (quoting *Health Servs. Mgmt.*, 975 F.2d at 1264).  The alleged partiality must be "'direct, definite, and capable of demonstration rather than remote, uncertain or speculative.'"  *Id.* (quoting *Health Servs. Mgmt.*, 975 F.2d at 1264).

Here, the Alston's evident partiality argument is based on a number of exchanges between the arbitration chair, James A. Johnstone, and the attorneys during the examination of defendant Fullwood, which, according to the Alstons, precluded the proper presentation of their case.  For example, at one point Johnstone interrupted the Alstons' cross-examination of Fullwood and asked a clarifying question that assertedly benefitted respondents.  Arbitration Transcript, 6/14/04, at 143:19–144:7.  At another point in the same cross-examination, Johnstone cut off the Alstons' attorney and instructed him "to [a]sk questions that have to do with the merits of the case."  *Id.* at 47:17.  At a third point during the cross-examination of Fullwood, while the Alstons' counsel was questioning Fullwood about a missing page of Fullwood's Answer, Johnstone interrupted and asked the Alstons' counsel "what [his] point" was and

determined that the missing page was "inadvertent" and did not "seem to have done any harm." *Id.* at 16:9–17:5. Additionally, the Alstons assert that Johnstone allowed leading questions of Fullwood by his counsel, in violation of the rules of evidence. The Alstons allege that, taken as a whole, these actions "demonstrate the evident partiality of the Chair which prevented [them] from properly presenting their case, and resulted in an award in favor of Respondents." Pets.' Mot. at 24.

The actions complained of by the Alstons failed to demonstrate the "evident partiality" that is contemplated by the FAA as grounds for vacating an arbitration award. The Alstons never suggest that there was any disqualifying bias due to some special relationship to a party or interest in the outcome of the proceedings on the part of an arbitrator. *See, e.g., Commonwealth Coatings Corp. v. Continental Casualty Co.*, 393 U.S. 145 (1968). Rather, the Alstons' arguments are premised upon a belief that the arbitrator should not have asked questions of the witnesses, should not have expressed opinions about the merits of the case, and should have followed the rules of evidence.

Given the advantages of arbitration—speed and informality—an arbitrator is certainly permitted "to act affirmatively to simplify and expedite the proceedings before him." *Fairchild*, 516 F. Supp. at 1313; *Kruse v. Sands Bros. & Co.*, 226 F. Supp. 2d 484, 488 (S.D.N.Y. 2002) (noting the "great deference given to arbitrator's decision to control order, procedure and presentation of evidence by federal courts."). Moreover, arbitrators are not bound by the rules of evidence. *Fairchild*, 516 F. Supp. at 1315; *Industrial Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH,* 141 F.3d 1434, 1443–44 (11th Cir. 1998) ("An arbitrator enjoys wide latitude in conducting an arbitration hearing. Arbitration proceedings are not constrained

by formal rules of procedure or evidence."). Furthermore, it is certainly permissible for an arbitrator to develop and express an opinion of the merits of the parties' claims during an arbitration. *Fairchild*, 516 F. Supp. at 1313; *Ballantine Books, Inc. v. Capital Distrib. Co.*, 302 F.2d 17, 21 (2d Cir. 1962). For these reasons, "[i]t is not surprising that within the informal confines of an arbitration proceedings, an unsuccessful party eventually may perceive the demeanor of an arbitrator as less than satisfactory." *Fairchild*, 516 F. Supp. at 1313. An arbitrator's legitimate efforts to control the proceedings in an expeditious manner often "may be viewed as abrasive or disruptive to a disappointed party." *Id.* Such displeasure, however, fails to qualify as grounds for vacating an arbitration award.

Because the Alstons' arguments amount to nothing more than displeasure with the manner in which the arbitrator controlled the hearing, they fail to meet the requisite heavy burden to go beyond speculation and establish specific facts to indicate an improper motive on the part of the arbitrator. Moreover, the record indicates that the Alstons were given ample time and opportunity to conduct a meaningful examination of Fullwood, Johnstone's demeanor notwithstanding.

**C. Confirmation of Award**

Section 9 of the FAA, which governs the confirmation of arbitration awards, states in relevant part:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title. If no court is specified in the agreement of the parties, then such

> application may be made to the United States court in and for the district within which such award was made.

9 U.S.C. § 9. Here, all of the conditions precedent to the confirmation are satisfied. First, when they executed the Uniform Submission Agreement, the parties agreed "to abide by and perform any award rendered pursuant to the Submission Agreement and further agree[d] that a judgment . . . may be entered upon such awards." UBS Opp'n, Exh. A, ¶ 4. Second, jurisdiction is proper in this court because the award was issued in the District of Columbia. Third, within one year of the award, the respondents requested that the award be confirmed. Finally, as discussed above, the court has determined that the award may not be vacated, modified, or corrected. Therefore, this court is bound to confirm the award. *See Bryson*, 268 F. Supp. 2d at 54.

### III.  CONCLUSION

In sum, the evidence presented by the Alstons, which the court presumes to be true for purposes of resolving the Alstons' motion, fails to satisfy their heavy burden of establishing that vacatur of the arbitration award is appropriate. Therefore, the Alstons' motion for summary judgment is denied [#18], the respondents' cross motions for summary judgment are granted [## 20, 23], and, pursuant to 9 U.S.C. § 9, the arbitration award is confirmed. An appropriate order accompanies this memorandum opinion.

Henry H. Kennedy, Jr.,
United States District Judge